Priority ✓
Send ✓
Enter ✓
Closed
JS-5/JS-6 ✓
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| LUCASFILM LTD., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SHEPPERTON DESIGN STUDIOS LIMITED, a United Kingdom company incorporated in England, ANDREW AINSWORTH, an individual, and DOES 1 through 10, both inclusive,<br><br>Defendants. | Case No. CV05-3434 RGK (MANx)<br><br>[PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

*NOTE CHANGES MADE BY THE COURT*

## I. FACTUAL BACKGROUND

Lucasfilm Ltd. ("Plaintiff") filed this action on May 6, 2005. Plaintiff's Complaint alleges copyright infringement, unfair competition, trademark infringement and state common law unfair competition against Shepperton Design Studios Limited ("Shepperton") and Andrew Ainsworth ("Ainsworth") (collectively, "Defendants"), for unauthorized exploitation of Plaintiff's copyrighted Stormtrooper and TIE fighter pilot characters and Plaintiff's Imperial logo trademark.

Plaintiff caused each of the Defendants to be personally served in England with a copy of the Summons and Complaint pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"). On July 15, 2005 Defendants appeared in this action through California counsel by filing their Stipulation with Plaintiff to extend the time for Defendants to respond to the Complaint. On August 16, 2005 Defendants filed their Motion and supporting Memorandum and Declarations requesting an Order dismissing this action on the grounds the Court lacks personal jurisdiction over them. Plaintiff filed opposition to Defendants' Motion and on September 12, 2006 Defendants filed a Memorandum and additional Declarations in reply. On October 3, 2006 and after considering the papers filed, this Court denied Defendants' Motion.

Defendants, however, failed to respond to the Complaint. On November 11, 2005, Plaintiff filed a First Amended Complaint against Defendants, which was served on Defendants' California counsel. Plaintiff also caused each of the Defendants to be personally served in England with a copy of the Summons and First Amended Complaint pursuant to the Hague Convention. Defendants failed to respond to the First Amended Complaint and on February 7, 2006, Plaintiff requested that the Clerk enter Defendants' Default. On March 2, 2006, the Court granted that request and the Clerk entered Defendants' Default that day.

Plaintiff now moves for entry of a Default Judgment. For the reasons discussed below, the Court grants Plaintiff's Motion.

1

## II. JUDICIAL STANDARD

Rule 55(b) of the Federal Rule of Civil Procedure provides for the Court's entry of a default judgment following entry of default by the Clerk. "The FRCP and the local rules in the Central District of California require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003), *citing* F. R. Civ. P. 55(b)(2) & L. Rule 55-1.

"The district court's decision whether to grant or deny a default judgment is discretionary in nature." *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). The Ninth Circuit has identified the following seven factors applicable to the decision whether to grant a Default Judgment: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id., citing Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Elektra Entm't*, 226 F.R.D. at 392, *quoting PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

## III. DISCUSSION

### A. **Plaintiff Has Fulfilled the Procedural Requirements for a Default Judgment.**

Plaintiff has complied with Rule 55(b)(2) of the Federal Rules of Civil Procedure and this Court's Local Rule 55-1, and the Declaration of Peter J. Anderson

establishes that (1) Defendants' default was entered by the Clerk on March 2, 2006; (2) their default was entered as to the First Amended Complaint filed November 15, 2005; (3) Defendants are not infants or incompetent persons; (4) the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) notice of Plaintiff's Motion has been served on Defendants.

### B. Application of the *Eitel* Factors.

#### 1. Factor One: The Possibility of Prejudice to Plaintiff if a Default Judgment is Not Entered.

Plaintiff "would be denied the right to judicial resolution of the claims presented" in this action if the Default Judgment is not entered. *Elektra Entm't*, 226 F.R.D. at 392. Further, Defendants, by choosing to default rather than appear and defend, are "deemed to have admitted the truth of Plaintiff's averments," thereby establishing their willful infringements and that Plaintiff would "likely suffer great prejudice" if a Default Judgment in not entered. *Philip Morris*, 219 F.R.D. at 499. The first *Eitel* factor therefore cuts in favor of granting Plaintiff's Motion.

#### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and Sufficiency of Plaintiff's Pleading.

The second and third *Eitel* factors are commonly analyzed together. *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002); *Elektra Entm't*, 226 F.R.D. at 392-93; *Philip Morris*, 219 F.R.D. at 499-500. These "two *Eitel* factors 'require that a Plaintiff state a claim on which the [Plaintiff] may recover.'" *Id.* at 499, quoting *Pepsico*, 238 F. Supp. 2d at 1175 (citations and quotations omitted).

##### (i) Plaintiff's First Claim for Relief: Defendants Infringed Plaintiff's Copyrights.

Plaintiff's First Claim for Relief is for infringement of the copyrights in the preexisting Stormtrooper artwork and the 1977 *Star Wars* Film. To prevail on its copyright infringement claim Plaintiff need only establish that (1) Plaintiff owns the

3

copyrights and (2) Defendants have violated "at least one of the exclusive rights granted to copyright holders under 17 U.S.C. § 106." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Plaintiff's First Amended Complaint establishes that Plaintiff owns the copyrights in the preexisting artwork and the 1977 *Star Wars* Film and has complied in all respects with the Copyright Act, and that the Register of Copyrights has issued the appropriate certificates of registration. First Amended Complaint ("FAC") at 9, lines 21-23, & at 9, ¶ 21. Defendants' failure to respond and defend constitutes an admission that these statements are true. *Elektra Entm't*, 226 F.R.D. at 392 ("After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages"). The copyright registrations issued by the Register of Copyrights also "constitute[s] prima facie evidence of the validity of the copyright[s]." 17 U.S.C. § 410(c); *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992).

Plaintiff's First Amended Complaint also establishes that Defendants have violated Plaintiff's exclusive rights under the Copyright Act, which include the exclusive rights to copy Plaintiff's works, to prepare derivative versions, to publicly distribute copies and to display copies of the works. 17 U.S.C. § 106(1)-(3) & (5). Violation of any one of these rights constitutes infringement. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). These exclusive rights extend to original characters visually depicted in artwork or movies. *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1216 (C.D. Cal. 1998). "The fact that a work in one medium has been copied from a work in another medium does not render it any the less a 'copy.'" 2 M. & D. Nimmer, *Nimmer on Copyright* § 8.01[B] (2005); *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992), *cert. denied* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (defendant's bronze sculpture of litter of puppies infringed Plaintiff's photograph of puppies).

///

Plaintiff alleges that Defendants copied Plaintiff's copyrighted artwork and Plaintiff's fanciful characters in Plaintiff's copyrighted 1977 *Star Wars* Film, that Defendants prepared three-dimensional copies of Plaintiff's copyrighted depictions, that Defendants publicly distributed those copies and that Defendants also publicly display them on Defendants' website, all without Plaintiff's consent. FAC at 5-9, ¶¶ 10-12, 15, 17 & 22, & Ex. 4 attached thereto. Plaintiff's allegations in its First Amended Complaint are more than sufficient to establish Defendants' multiple infringements of Plaintiff's copyrights.

Accordingly, Plaintiff has established a substantial claim for copyright infringement.

### (ii) *Plaintiff's Second Claim for Relief: Defendants Also Violated the Lanham Act.*

Plaintiff's Second Claim for Relief is for unfair competition under the Lanham Act. The Lanham Act prohibits, *inter alia*, the use in connection with any goods or services of any word, term or name, any false designation of origin or any false or misleading description or representation in commercial advertising or promotion, that misrepresents the nature, characteristics or qualities of the person's or anyone else's goods, services or commercial activities. 15 U.S.C. § 1125(a)(1)(B).

Plaintiff's First Amended Complaint establishes that Defendants have violated the Lanham Act by making in their advertising and promotion numerous false descriptions and representations as to the nature, characteristics and qualities of Defendants' products. Defendants' false representations in advertising and promoting their products include Defendants' false representations that Defendants, not Plaintiff, are the "original" designers and creators of Plaintiff's Stormtrooper and TIE fighter pilot characters, that Defendants' products are made from the original molds used to create the helmets and costumes worn by actors in Plaintiff's *Star Wars* Films and that Defendants' products are "exact" duplicates of those helmets and costumes. FAC at 6-7, ¶ 14-16, & at 10, ¶ 26, & at Ex. 4 attached thereto. Plaintiff also alleges that

1  Defendants willfully and deliberately made these false and misleading statements and
2  representations in advertising and promoting their products. *Id.* at 8, ¶ 17. As a result
3  of Defendants' decision not to appear and defend, these allegations are also deemed
4  true. *Elektra Entm't*, 226 F.R.D. at 392.

5  Accordingly, Plaintiff has also established a substantial claim for willful unfair
6  competition under the Lanham Act.

### (iii) *Plaintiff's Third Claim for Relief: Defendants Also Infringed Plaintiff's Trademark.*

9  The Lanham Act also prohibits the infringement of trademarks, even if they
10 have not been registered with the United States Patent and Trademark Office. *Two
11 Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68, 112 S.Ct. 2753, 120 L.Ed.2d
12 615 (1992) (infringement of unregistered marks prohibited by Section 43(a), 15 U.S.C.
13 § 1125(a)).

14 Plaintiff alleges that for nearly 30 years it has used the Imperial logo on the
15 well-known and instantly recognized TIE fighter pilot helmets and also as a trademark
16 for, *e.g.*, entertainment-related activities, toys and other merchandise. FAC at 6, ¶ 13,
17 & Ex. 3 attached thereto. Plaintiff also alleges that Defendants have placed copies of
18 the Imperial logo on Defendants' helmets and in Defendants' advertising, deliberately
19 creating the false and misleading impression that Defendants or their products are
20 affiliated with or sponsored or approved by Plaintiff. *Id.* at 7, ¶ 15, at 8, ¶ 17 & at 11, ¶
21 30, & Ex. 4, at 20, attached thereto.

22 Plaintiff has therefore also established a substantial claim for trademark
23 infringement.

### (iv) *Plaintiff's Fourth Claim for Relief: Defendants' Conduct Also Constitutes Unfair Competition Under State Law.*

26 The California common law of unfair competition prohibits anticompetitive
27 activities including "passing off" and analogous misleading conduct by which a
28 defendant seeks to trade off of the Plaintiff's efforts. *Bank of the West v. Superior*

1  *Court*, 2 Cal.4th 1254, 1263, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992); *Lutz v. DeLaurentiis*, 211 Cal. App. 4th 1317, 1322, 260 Cal. Rptr. 106 (1989) (use of confusingly similar titles); 11 B. Witkin, *Summary of California Law* 762-67 (9th Ed. 1990).

Plaintiff alleges that Defendants are falsely stating that they designed and created Plaintiff's Stormtrooper and TIE fighter pilot characters, helmets and costumes, that Defendants are passing off their products as based on the "original" *Star Wars* molds and as exact duplicates of Plaintiff's characters, helmets and costumes, and that Defendants are copying Plaintiff's Imperial logo. FAC at 7-8, ¶¶ 15-17. Further, Plaintiff alleges that Defendants have acted with the purpose of trading upon the great public recognition associated with Plaintiff, its *Star Wars* Films and its Stormtrooper and TIE fighter pilot characters. *Id.* at 8, lines 4-6.

Plaintiff has alleged substantial claims for copyright infringement, federal and State unfair competition and trademark infringement, and therefore the second and third *Eitel* factors also cut in favor of the entry of a Default Judgment.

### 3. *The Fourth Factor: The Amount of Money at Stake in the Action.*

Plaintiff seeks Judgment in the total amount of $10,000,000, plus injunctive and other relief and attorney's fees and costs. Given that Defendants are acting willfully, that their infringements are ongoing, that they are reaping substantial profits from those infringements and that once their motion to dismiss was denied Defendants chose not to "comply with the judicial process or to participate in any way in the present litigation," the "imposition of a substantial monetary award" is justified and this factor also cuts in favor of entering a Default Judgment. *Philip Morris*, 219 F.R.D. at 500 (fourth *Eitel* factor favored default judgment where Defendants willfully imported a large number of counterfeit cigarettes, there was a likelihood of damaging confusion and Defendants defaulted; Plaintiff awarded maximum statutory damages of $2,000,000 under Lanham Act).

///

4. ***The Fifth Factor: The Possibility of a Dispute Concerning Material Facts.***

A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Philip Morris*, 219 F.R.D. at 500; *Elektra Entm't*, 226 F.R.D. at 393 (same). Here, Defendants are represented by counsel, Defendants filed an unsuccessful motion to dismiss, Defendants were warned their default would be taken and Defendants chose not to defend either Plaintiff's original Complaint or Plaintiff's First Amended Complaint. Thus, the likelihood of any genuine issue "is, at best, remote." This factor also cuts in favor of entry of a Default Judgment.

5. ***The Sixth Factor: Whether The Default Was Due To Excusable Neglect.***

Defendants were personally served with process, Defendants filed a motion to dismiss and Defendants' counsel has advised that Defendants decided not to defend this action. Rather than excusable neglect, Defendants' failure to respond to the First Amended Complaint is due to "willful disobedience" of the Court's Summons. *Philip Morris*, 219 F.R.D. at 500-01; *Elektra Entm't*, 226 F.R.D. at 393. This factor cuts in favor of the entry of a Default Judgment.

6. ***The Seventh Factor: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits.***

The seventh *Eitel* factor is the policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. Defendants' decision not to defend this case "makes a decision on the merits impractical, if not impossible." *Pepsico, Inc*, 238 F. Supp. 2d at 1177.

Accordingly, all of the *Eitel* factors cut decidedly in favor of entry of a Default Judgment.

///
///
///

C. **Plaintiff's Remedies.**

1. ***Defendants' Copyright Infringements: Actual Damages and Profits.***

Plaintiff's remedies under the Copyright Act include recovery of actual damages and Defendants' profits from their infringements. 17 U.S.C. § 504(a). Actual damages and profits "are two sides of the damages coin -- the copyright holder's losses and the infringer's gains." *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).

"'Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.'" *Polar Bear*, 384 F.3d at 708, *quoting McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003). Here, and consistent with *Polar Bear*, 384 F.3d at 709, Plaintiff seeks actual damages based on Plaintiff's lost license fees that it would have received if Defendants had licensed the rights that Defendants appropriated. On a Motion for default judgment, "Plaintiff's burden in 'proving up' damages is relatively lenient." *Philip Morris*, 219 F.R.D. at 498. Plaintiff has carried that burden and the evidence submitted by Plaintiff establishes that a reasonable license fee for the *Star Wars* merchandising rights that Defendants have appropriated for themselves exceeds the $5,000,000 in damages and profits that Plaintiff seeks on its first claim for copyright infringement.

As for Defendants' profits, Plaintiff is only required to prove Defendants' revenues from their infringements. The burden is then on Defendants to prove their deductible expenses and the portion, if any, of the profits attributable to non-infringing factors. 17 U.S.C. § 504(b); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (quoting § 504(b)). "Accordingly, 'all gross revenue is presumed to be profit "attributable to the infringement," <u>unless</u> the infringer is able to demonstrate otherwise.'" 4 *Nimmer on Copyright* § 14.03[B] (emphasis added), *quoting Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 512 n.9 (4th Cir. 2002). "Any

doubt as to the computation of costs or profits is to be resolved in favor of the Plaintiff." "Any doubt as to the correctness of the profit calculation should . . . be resolved in favor of the plaintiff." *Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876, 881, n. 4 (9th Cir. 1992), *cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541.

Plaintiff has shown that Ainsworth's Declaration filed in support of Defendants' Motion to Dismiss establishes that Defendants' revenues through August 12, 2005 totaled $354,388, and that extrapolating from that figure, Defendants' additional revenues over the last 12 months are $265,788, for a total of at least $620,176. Plaintiff has also established that 85% of worldwide *Star Wars* merchandising revenue from replicas costing more than $100, is derived from sales in the United States and, accordingly, Defendants have received at least $527,150 from their United States infringements of copyright. Since a defendant who appears and defends but fails to produce evidence of deductible expenses can claim none, *Nelson-Salabes*, 284 F.3d at 512 n. 10; Defendants can be in no better position where they refuse to appear at all and chose instead to default. Defendants have not submitted any evidence of deductible expenses and, as a result, the revenue figure is deemed their profits. *Id.*

Plaintiff's actual damages and Defendants' profits from Defendants' copyright infringements therefore exceed the $5,000,000 in damages and profits that plaintiff pleaded on this claim. Because plaintiff's recovery on each claim is limited by the amounts plaintiff pleaded in its First Amended Complaint and as to which defendants chose to default, F. R. Civ. P. Rule 54(c), $5,000,000 is properly awarded on this claim.

**2. *Defendants' Unfair Competition and Trademark Infringement In Violation Of The Lanham Act: Damages, Trebled, And Profits.***

Plaintiff's remedies under its second and third claims for relief for Defendants' unfair competition and trademark infringement in violation of the Lanham Act include

///

Plaintiff's actual damages, which the Court may increase three-fold in appropriate circumstances, and Defendants' profits. 15 U.S.C. § 1117(a).

Under the Lanham Act, "[d]amages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) (affirming award of damages based on plaintiff's lost profits), *quoting Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *cert. denied* 510 U.S. 815, 114 S.Ct. 64, 126 L.Ed.2d 34. As to lost profits, Plaintiff has submitted the Declaration of Mr. Roffman, which establishes that the value of the rights that Defendants appropriated for themselves is at least $12,500,000 and that Plaintiff would have received at least $2,500,000 in license fees for those rights. To the extent not duplicative of the award on the copyright claim, these damages are properly recovered on the Lanham Act claims. In addition, Mr. Roffman's Declaration establishes that Defendants' wrongful conduct has caused at least $10,000,000 in damages to Plaintiff's reputation and goodwill. This evidence is more than sufficient to meet the "lenient" standard applicable on a motion for entry of default judgment. *Philip Morris*, 219 F.R.D. at 498. Further, in light of Defendants' willful violations of the Lanham Act, trebling of those damages is appropriate under 17 U.S.C. Section 1117(a).

As to profits, Plaintiff is again only required to prove Defendants' revenues, 15 U.S.C. Section 1117(a); and Defendants' have forfeited the opportunity to prove deductible costs. However, the award of profits on the Lanham Act claims are subsumed within the award of profits on the copyright claim discussed above.

3. ***Defendants' Unfair Competition In Violation Of State Law: Compensatory and Punitive Damages.***

Plaintiff's monetary remedies for Defendants' unfair competition under State law are compensatory ~~~~ damages. Cal. Civ. Code §§ 3333 & 3294. Plaintiff's compensatory damages under this claim and the Lanham Act claims would appear duplicative, however. ~~~~

11

2  [redacted]
3  [redacted]
4  [redacted]
5  [redacted]
6  [redacted]
7  [redacted]

### 4. *A Permanent Injunction.*

Plaintiff's remedies also include a permanent injunction against Defendants' continued infringements. 17 U.S.C. § 502; *Abend v. MCA, Inc.*, 863 F.2d 1465, 479 (9th Cir. 1988)), *aff'd sub nom. Stewart*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) ("a finding of [copyright] infringement presumptively entitles the Plaintiff to an injunction"); 15 U.S.C. § 1116(a). The Court concludes that a permanent injunction is appropriate here.

### 5. Defendants' Surrender of the Infringing Materials.

In addition, Plaintiff's remedies under the Copyright Act include an Order or Judgment directing that the infringing copies and all "molds . . . or other articles by means of which such copies . . . may be reproduced" be delivered up for "destruction or other reasonable disposition." 17 U.S.C. § 503(b). This Section authorizes the Court to direct that the copies and articles be destroyed or that they "be delivered to the possession of the plaintiff." 4 *Nimmer on Copyright* § 14.08. The Court concludes that an Order and Judgment requiring the delivery to Plaintiff of all infringing copies and molds and other materials used in making the infringing copies, is appropriate in this case.

### 6. Prejudgment Interest.

Plaintiff's remedies also include prejudgment interest. *See, e.g., Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 716-18 (9th Cir. 2004) (prejudgment interest under Copyright Act).

### 7. Attorneys' Fees and Costs.

Plaintiff's copyright remedies include an award of attorney's fees and costs. 17 U.S.C. §§ 505 & 1202(b)(5). "'[E]xceptional circumstances' are not a prerequisite to an award of attorneys fees" under the Copyright Act, and instead "district courts may freely award fees" if doing so "promote[s] the Copyright Act's objectives." *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996). The factors considered in awarding fees include "frivolousness, motivation, objective unreasonableness (both in the factual and legal arguments of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), *quoting Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) (parenthetical in original).

Defendants willfully infringed Plaintiff's copyrights and continue to do so today. 4 *Nimmer on Copyright* § 14.10[D][2][a] ("One of the most common circumstances warranting an award of attorney's fees is deliberate infringement"). Defendants ignored the opportunity to present a defense, choosing to disobey this Court's Summonses. Also, considerations of compensation and deterrence are advanced by requiring that Defendants reimburse Plaintiff its attorney's fees. Accordingly, the factors all cut in favor of an award of attorney's fees to Plaintiff.

Further, since Plaintiff's non-copyright claims are related to the copyright claim and arise from the same basic facts, no apportionment between the copyright and non-copyright claims is required. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997). In fact, in light of Defendants' default without litigating any claims, an apportionment between fees incurred in prosecuting the copyright and non-copyright claims would be impossible. Alternatively, to the extent fees could be attributed to the Lanham Act claims, an award of those fees is proper because this is an "exceptional" case under the Lanham Act." 15 U.S.C. § 1117(a). "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully."

1 | *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003).
2 | Defendants willfully and deliberately infringed and made, and are continuing to make,
3 | false representations in the advertising and promotion of their products. As a result,
4 | this is an "exceptional" case and an award of attorney's fees under the Lanham Act is
5 | appropriate. Also, the Lanham Act, Copyright Act and the State common law unfair
6 | competition claims are "so intertwined that it is impossible to differentiate between
7 | work done on" them and an apportionment is unnecessary. *Gracie v. Gracie*, 217 F.3d
8 | 1060, 1069 (9th Cir. 2000).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for entry of Default Judgment is granted.

**IT IS SO ORDERED.**

Dated: SEP 20 2006

Honorable R. Gary Klausner
United States District Judge

Submitted by:
Peter J. Anderson, Esq., SBN 088891
E-mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard
Suite 2010
Santa Monica, CA 90401

Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Plaintiff
LUCASFILM LTD.

14

<u>PROOF OF SERVICE</u>

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

I am employed in the County of Los Angeles, State of California and my business address is 100 Wilshire Boulevard, Suite 2010, Santa Monica, CA 90401. I am over the age of 18 and not a party to this action.

On August 21, 2006, I served the foregoing document described as *[PROPOSED]* **ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT**, on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at Santa Monica, California, addressed as follows:

William L. Robinson, Esq.
Lori A. Winfree, Esq.
Nixon Peabody LLP
2040 Main Street
Suite 850
Irvine, CA 92614

[X] I caused such envelope with postage thereon fully prepaid to be placed in the United States mail. I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. Correspondence for mailing is deposited with the United States Postal Service on that same day in the ordinary course of business. The foregoing document was sealed and placed for collection and mailing on the foregoing date, following the firm's ordinary practices. I am aware that on motion of any party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in the affidavit.

[ ] I caused such document to be delivered by hand to the offices of the addressee.

[ ] I placed such envelope in a box or other facility regularly maintained by Federal Express, in an envelope or package designated and provided by Federal Express, with delivery fees paid or provided for, addressed to the above-indicated addressees.

[ ] I also caused a copy of the foregoing document to be faxed to the addressee.

Executed on August 21, 2006 at Santa Monica, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

15